HARRY L. CAMPBELL et al.

*v.*

THE JOHN W. TAYLOR MANUFACTURING COMPANY.

[Filed March 3d, 1902.]

1. The eighth section of the Mechanics' Lien law defines "fixed machinery for manufacturing purposes" to be a building; and machines furnished to become parts of such a building are materials for which a lien may be filed under that law.

2. The bringing of such machines upon the premises is the commencement of the building, by the twenty-eighth section of the same law.

---

On appeal of the Prentiss Tool and Supply Company from an order of the chancellor, advised by Vice-Chancellor Grey (whose opinion is reported in *17 Dick. Ch. Rep. 307*), affirming the determination of the receiver of the defendant, dismissing their petition, praying the receiver to consider and adjudge the

petitioner's claim to be a mechanics' lien claim and to be prior and preferred to the claim of the common creditors of the defendant.

*Mr. John M. Perry* (of the New York bar) and *Mr. Charles K. Chambers,* for the Prentiss Tool and Supply Company, appellant.

*Mr. Walter A. Barrows* and *Mr. Eckard P. Budd, Jr.,* for the receiver.

The opinion of the court was delivered by

GARRETSON, J.

The John W. Taylor Manufacturing Company purchased from the Prentiss Tool and Supply Company five pieces of machinery, viz., one boring mill, one boring and turning mill, one engine lathe, one feed drill, and one key-setter and counter-shaft, to be placed in the factory of the Taylor company for the purpose of manufacturing water-wheels.

In order to use the machines effectively it was necessary that they should be placed upon substantial foundations, built in or upon the ground.

The machines were all delivered upon the premises of the Taylor company, and all except the boring and turning mill were actually placed upon foundations especially prepared for them, constructed of brick, cement and timber, in or upon the ground; the plans for a foundation of like character for the boring and turning mill had been prepared, but that foundation has not actually been built.

On the 22d of January, 1901, the Prentiss Tool and Supply Company filed a lien claim for the price of these machines against the Taylor company, upon the fixed machinery, of which these machines formed a part, and upon the land whereon the same stood, including the lot or curtilage whereon the same was erected. On the 28th of January, 1901, the chancellor appointed a receiver for the Taylor company, and afterwards the Prentiss company presented a petition to the receiver claiming a me-

chanics' lien upon the premises described, and praying that the receiver would adjudge their claim for the price of these machines to be prior and preferred to the claim of the common creditors of the Taylor company; the receiver admitted the claim of the petitioner as that of a common creditor, but denied the claim any preference or priority by reason of the lien. From the determination of the receiver the Prentiss company appealed to the chancellor, who made an order, advised by the vice-chancellor, sustaining the adjudication of the receiver.

From this order of the chancellor the Prentiss company appeals to this court.

It is provided by section 8 of the Mechanics' Lien law (*P. L. of 1898 p. 538*) :

"Any addition erected to a former building, and any fixed machinery or gearing, or other fixtures for manufacturing purposes, shall be considered a building, for the purposes of this act."

By section 1 it is provided :

"Every building hereafter erected or built within this state shall be liable for the payment of any debt contracted and owing to any person, for labor performed or materials furnished, for the erection and construction thereof, which debt shall be a lien on such building and on the land whereon it stands, including the lot or curtilage whereon the same is erected."

And it is further provided by the twenty-eighth section, that, in case of gearing or machinery, the bringing of the same upon the premises shall be the commencement of the building.

The machines were some of the materials furnished for the erection of a building, known in the statute as "fixed machinery for manufacturing purposes." This building was made up of the foundation, the attachment of the machines to the foundation, the machines themselves, and whatever was necessary to adapt and make it in its entirety fixed machinery suitable for the purpose for which it was intended.

The machine was as much a part of the materials furnished for the erection and construction of the building described in the statute as the bricks, mortar and timbers in the foundations,

and the bolts and fastenings which held the two together. The four machines had actually become a part of the building—fixed machinery for manufacturing purposes—and the fifth was designed and intended to also become a part thereof; it had actually been brought upon the premises, and was lying there to be put in place.

The determination of this question is one of statutory construction: it does not depend upon the law of fixtures; not upon whether the particular machines will be destroyed by an attempt to separate them from the place in which they have become fixed, or can be taken and set up in another place and there be used as in the place of their first erection. If it appears that they were not mere movable tools, but intended to be used as a part of a permanent manufacturing plant, then, under the statute, that building, of which they have become such part, is liable to a lien for their cost.

In *Morris County Bank* v. *Rockaway Manufacturing Co., 1 McCart. 189,* Chancellor Green held: "It is objected to the claim, of the lienor, and the fact is established by the evidence, that a part of the materials furnished by him were not used in the construction of any building or fixtures for manufacturing purposes upon the mortgaged premises, but continued unused at the time of the insolvency of the mortgagors. The evidence shows that the materials were furnished to order for the construction of the converting furnace, and were delivered upon the premises of the company. The bulk of them were used in the converting furnace; a part of them at the rolling-mill; but a portion of them were left unused, the company having failed before the completion of the work. The materials having been furnished for the building, and delivered to the company or their agents in good faith, it is immaterial to the validity of the lien whether they were used in the building or not. The terms of the statute are very clear. It declares that the building shall be liable for the payment of any debt contracted and owing to any person for materials furnished for the erection and construction thereof, which debt shall be a lien on the building and the land whereon it stands, including the lot or curtilage whereon the same is erected. The right of the lien depends upon the fact that the

debt was incurred and the materials furnished for the purpose of the building. In the absence of fraud on the part of the creditor, the rights of the lienholder are not affected by a failure to use the materials or by their diversion from the purpose for which they were intended. The law upon this subject is well settled."

The debt incurred in the purchase of these machines was for materials entering into the construction of a building, within the meaning of the statute, and the building and the land whereon it was constructed are liable to a lien, and this debt should have been declared to be a preferred debt and payable prior to the debts of common creditors.

The order of the chancellor will be reversed, and the cause remanded to the court of chancery, to be proceeded with in accordance with this determination.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM—14.

*For affirmance*—None.